# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**Case Number 23-10801-C**

**Case Number 23-11273-C**

**Case Number 23-11274-C**

---

**WACKO'S TOO, INC.**, et al,                    )
                                                  )
     Appellants,                                )
                                                  )
vs.                                               )
                                                  )
**CITY OF JACKSONVILLE,**                         )
                                                  )
     Appellee,                                  )
_____)
                                                  )
**EMPERORS, INC.**, et al,                        )
                                                  )
     Appellants,                                )
                                                  )
vs.                                               )
                                                  )
**CITY OF JACKSONVILLE**, et al,                  )
                                                  )
     Appellees,                                 )
_____)
                                                  )
**WACKO'S TOO, INC.**, et al,                     )
                                                  )
     Appellants,                                )
                                                  )
vs.                                               )
                                                  )
**CITY OF JACKSONVILLE**, et al,                  )
                                                  )
     Appellees.                                 )
_____)

# APPELLANTS' INITIAL BRIEF

**ON APPEAL FROM FINAL JUDGMENTS
AND PERMANENT INJUNCTIONS
MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION
THE HONORABLE TIMOTHY J. CORRIGAN
NOS 3:19-cv-01110-TJC-MCR / 3:20-cv-303-TJC-MCR &
3:22-cv-798-TJC-MCR**

JAMES S. BENJAMIN, Esquire
Florida Bar No.: 293245
DANIEL R. AARONSON, Esquire
Florida Bar No.: 314579
1700 East Las Olas Blvd., Suite 202
Ft. Lauderdale, Florida 33301
(954) 779-1700 (Fax) (954) 779-1771
sexlaw@bellsouth.net
danaaron@bellsouth.net

GARY S. EDINGER, Esquire
Florida Bar No. 0606812
Benjamin, Aaronson, Edinger &
    Patanzo, P.A.
305 N.E. 1st Street
Gainesville, Florida 32601
(352) 338-4440  (Fax) (352) 337-0696
GSEdinger12@gmail.com

*Attorneys for Appellants*

IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

Wacko's Too, Inc., et al v.                    Case No.: 23-10801-C
City of Jacksonville

Emperors, Inc., et al v.                       Case No.: 23-11273-C
City of Jacksonville, et al

Wacko's Too, Inc., et al v.                    Case No.: 23-11274-C
City of Jacksonville, et al

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. Rule 27.1(a)(6), Appellants certify that the following persons have an interest in the outcome of this case:

A.    DANIEL R. AARONSON – Attorney for Appellants / Plaintiffs

B.    N. O. ARCHBOLD – Defendant

C.    REBECCA ANDERSON – Plaintiff

D.    BARE ASSETS, INC. – Appellant / Plaintiff

E.    BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. – Attorney firm for Appellants / Plaintiffs

F.    JAMES S. BENJAMIN – Attorney for Appellants / Plaintiffs

G.    BIG B RANCH, INC. d/b/a "Cocktails Showbar and Lounge" – Plaintiff / Appellant

H.    CITY OF JACKSONVILLE – Appellee / Defendant

I.    NEVA CLINKSCALE – Plaintiff

J.    HONORABLE TIMOTHY J. CORRIGAN  – District Judge, Middle District of Florida

K.    GARY S. EDINGER  – Attorney for Appellants / Plaintiffs

L.    EMPEROR'S, INC. – Appellant / Plaintiff

M.    ESFUND, INC., d/b/a "Gold Rush" – Plaintiff / Appellant

N.    CRAIG D. FEISER  – Attorney for Appellees / Defendants

O.    CHELSEA GALLAGHER – Plaintiff

P.    MARY MARGARET GIANNINI  – Attorney for Appellees / Defendants

Q.    MEGAN HARDY – Plaintiff

R.  HORTON ENTERPRISES, INC., d/b/a "The New Solid Gold" – Appellant / Plaintiff

S.  J. R. LOUNGE OF JAX, INC. d/b/a "SOS Lounge" – Plaintiff

T.  KASSAB NIGHTLIFE LLC, d/b/a "Centerfold Lounge" – Plaintiff

U.  CHELSEY LAMON – Plaintiff

V.  M & G SAFAR INC., d/b/a "Gate's Gentleman's Club" – Plaintiff

W.  MARIA D'S INC., d/b/a "Bottomz Up" – Plaintiff

X.  STEPHANIE MEDINA – Plaintiff

Y.  MHHS-SINSATIONS, LLC, d/b/a "Sinsations" – Appellant / Plaintiff

Z.  MT PRODUCTIONS, INC., d/b/a "Thee Officers Club" – Appellant / Plaintiff

AA.  PATMILT, INC., d/b/a "Passions" – Appellant / Plaintiff

BB.  ALEXZANDRIA PELLITTERI-ALLEN – Plaintiff

CC.  NATALIE SANCHEZ – Plaintiff

DD.   SES JAX LLC, d/b/a "Flashdancers" – Plaintiff / Appellant

EE.   HARVEY SHUMAN  – Principal of several of the Appellant / Plaintiff entities

FF.   JASON TEAL  – Attorney for Appellees / Defendants

GG.   TIFFANY TYRRELL  – Plaintiff

HH.   MICHAEL TOMKOVICH  – Principal of several of the Appellant / Plaintiff entities

II.   WACKO'S TOO, INC., d/b/a "Wackos"  – Appellant / Plaintiff

JJ.   WHITES PLACE LLC, d/b/a "Gold Club Jacksonville"  – Appellant / Plaintiff

KK.   MIKE WILLIAMS, Sheriff – Defendant / Appellee

LL.   GABY C. YOUNG – Attorney for Appellees / Defendants

None of the foregoing entities is a publicly traded corporation.

DATED:  June 28, 2023.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

  /s/  Gary S. Edinger

| | |
|---|---|
| DANIEL R. AARONSON, Esquire | GARY S. EDINGER, Esquire |
| Florida Bar No.: 314579 | Florida Bar No. 0606812 |
| JAMES S. BENJAMIN, Esquire | 305 N.E. 1st Street |
| Florida Bar No.: 293245 | Gainesville, Florida 32601 |
| 1700 East Las Olas Blvd., Suite 202 | (352) 338-4440  (Fax) (352) 337-0696 |
| Ft. Lauderdale, Florida 33301 | GSEdinger12@gmail.com |
| (954) 779-1700 (Fax) (954) 779-1771 | |
| sexlaw@bellsouth.net | |
| danaaron@bellsouth.net | |

*Attorneys for Appellants*

C-5 of 5

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument for this appeal. Appellants present a case of first impression in this Circuit addressing the constitutionality of an age-based ban on the speech of young adults engaged in exotic dance. This Court has not previously upheld such a ban on adults where First Amendment rights are at stake. Given the importance and uniqueness of this issue, briefing would be well complemented by an oral presentation.

## **TABLE OF CONTENTS**

<u>Page</u>

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v-xviii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

PREFACE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xx-xxi

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . 2-9

      A.    Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-6

      B.    Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

      C.    Statement of the Standard of Review . . . . . . . . . . . . . . . . . . . 9

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-55

I.    THE PROHIBITION AGAINST PERFORMERS UNDER THE AGE
    OF TWENTY-ONE VIOLATES THE FIRST AMENDMENT . . . . . . . . . . 12-47

      A.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

B.    Most Courts which have Considered Age-Based Restrictions on Adult's Speech Rights have found that they Violate the First Amendment. . . . . . . . . . . . . . . . . . . . 13-17

C.    The Prohibition against Performers under the Age of Twenty-One is Content-Based and Cannot Survive Strict Scrutiny. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-22

D.    The Prohibition against Performers under the Age of Twenty-One is Underinclusive. . . . . . . . . . . . . . . . . . . . . . 22-24

E.    The Prohibition against Performers under the Age of Twenty-One Cannot Survive Intermediate Scrutiny because it is not Narrowly Tailored. . . . . . . . . . . . . . . . . . . 24-45

    (1)   The Trial Court Improperly Conflated its Analysis of Adverse Secondary Effects with the O'Brien Test Applicable to Intermediate Scrutiny . . . . . . . . . . 28-31

    (2)   A Flat Ban on Speech is, by Definition, not Narrowly Tailored. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-35

    (3)   The Ban on Performers under the Age of Twenty-One Fails to Provide any Alternative Avenues of Communication. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

    (4)   There are Obvious Less Intrusive Means of Regulation than Jacksonville's Ban on Performers under the Age of Twenty-One. . . . . . . . . . . . . . . . . . 37-41

    (5)   No other Jurisdiction in Florida has Adopted an Age-Based Ban on Adult Performers. . . . . . . . . . . . . 41-43

    (6)   The City Failed to Consider any Less Restrictive Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43-45

F.      The Prohibition against Performers under the Age of Twenty-One does not Further the Asserted Government Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45-47

II.     THE BAN AGAINST PERFORMERS UNDER THE AGE OF TWENTY-ONE IS PREEMPTED BY §562.13, FLA.STAT. . . . . . . . . . . . . . . . . . . 48-50

III.    JACKSONVILLE'S LICENSING SYSTEM FOR PERFORMERS IMPOSES AN UNCONSTITUTIONAL PRIOR RESTRAINT BECAUSE IT FAILS TO PRESERVE THE STATUS QUO PENDING JUDICIAL REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50-53

IV.     THE ORDINANCE DOES NOT GUARANTEE A LICENSING DECISION WITHIN A BRIEF PERIOD OF TIME. . . . . . . . . . . . . . . . . . . . . . . . . . 53-55

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

iv

## **TABLE OF CITATIONS**

<u>**Cases**</u>                                                                                       <u>**Page**</u>

<u>44 Liquormart, Inc. v. Rhode Island</u>,

    517 U.S. 484 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

<u>American Entertainers, L.L.C. v. City of Rocky Mount, N.C.</u>,

    888 F.3d 707 (4th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16 n. 8

<u>ASF, Inc. v. City of Seattle</u>,

    408 F.Supp. 2d 1102 (W.D. Wash. 2005) . . . . . . . . . . . . . . . . . 21 n. 10

<u>Ashcroft v. Free Speech Coal.</u>,

    535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

<u>Bantam Books v. Sullivan</u>,

    372 U.S. 58 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

<u>Barnes v. Glen Theatre, Inc.</u>,

    501 U.S. 560 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14 n. 6, 29

<u>Bay Area Peace Navy v. United States</u>,

    914 F.2d 1224 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

BellSouth Telecommunications, Inc. v. Town of Palm Beach,

    252 F.3d 1169 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 48

Billups v. City of Charleston, S.C.,

    961 F.3d 673 (4th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 44

Board of Trustees of State Univ. of N.Y. v. Fox,

    492 U.S. 469 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 37

Bolger v. Youngs Drug Products Corp.,

    463 U.S. 60 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Boos v. Barry,

    485 U.S. 312 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Brewer v. City of Albuquerque,

    18 F.4th 1205 (10th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 44

Brown v. Entm't Merchants Ass'n,

    564 U.S. 786 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Casey v. City of Newport, R.I.,

    308 F.3d 106 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29-30

City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC,

    142 S.Ct. 1464 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,

    447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 n. 12

City Council v. Taxpayers for Vincent,

    466 U.S. 789 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-32

City of Cincinnati v. Discovery Network, Inc.,

    507 U.S. 410 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 37, 45

City of Erie v. Pap's A.M.,

    529 U.S. 277 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 n. 6

City of Los Angeles v. Alameda Books, Inc.,

    535 U.S. 425 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 31, 36

City of Renton v. Playtime Theatres, Inc.,

    475 U.S. 41 (1986) . . . . . . . . . . . . . . . . . 19, 20, 21, 22, 25 n. 12, 29, 35

Club Madonna Inc. v. City of Miami Beach,

    42 F.4th 1231 (11th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,

    657 F.3d 936 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35 n. 18

Crystal Entm't & Filmworks, Inc. v. Jurado,

    643 F.3d 1313 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

C.T. v. Red Roof Inns, Inc.,

    2:19-CV-5384, 2021 WL 2942483

    (S.D. Ohio July 1, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24 n. 11

Curves, LLC v. Spalding Cnty., Ga.,

    685 F.3d 1284 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Daytona Grand, Inc. v. City of Daytona Beach,

    490 F.3d 8601 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 28 n. 13

DC Operating, LLC v. Paxton,

    586 F.Supp. 3d 554 (W.D. Tex. 2022) . . . . . . . . . . . . . . . . . . . . . . . 16

Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville

    & Davidson Cnty., Tennessee,

    274 F.3d 377 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Doe I v. Landry,

    909 F.3d 99 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Doe I et al v. Marine-Lombard,

    Case No.: 2:16-cv-14876-CJB-KWR

    (E.D. La. Sept. 30, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 n. 7

Edenfield v. Fane,

    507 U.S. 761 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 43, 45, 46

Essence, Inc. v. City of Fed. Heights,

    285 F.3d 1272 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Fane v. Edenfield,

    945 F.2d 1514 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

FF Cosmetics FL, Inc. v. City of Miami Beach,

    866 F.3d 1290 (11th Cir. 2017) . . . . . . . . . . . . . 27, 30, 37, 38, 41, 43

Flanigan's Enterprises, Inc. of Georgia v. Fulton Cnty., Ga.,

    596 F.3d 1265 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

Florida Bar v. Went For It, Inc.,

    515 U.S. 618 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Fly Fish, Inc. v. City of Cocoa Beach,

    337 F.3d 1301 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,

    11 F.4th 1266 (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . 40, 46-47

Fraser v. Bureau of Alcohol, Tobacco, Firearms and Explosives,

    _ F.Supp. 3d _, 2023 WL 3355339 (E.D. Va. May 10, 2023) . . 17 n. 9

Freedman v. Maryland,

    380 U.S. 51 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 52, 53, 55

Frisby v. Schultz,

    487 U.S. 474 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 35 n. 18

FW/PBS, Inc. v. City of Dallas,

    493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 52, 53

Ginsberg v. State of N. Y.,

    390 U.S. 629 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Harnish v. Manatee Cty.,

    783 F.2d 1535 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Howard v. City of Jacksonville,

     109 F.Supp. 2d 1360 (M.D. Fla. 2000) . . . . . . . . . . . . . . . . . . . 21 n. 10

Ibanez v. Florida Dept. of Bus. & Prof'l Regulation,

     Bd. of Accountancy,

     512 U.S. 136 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Initiative & Referendum Inst. v. U.S. Postal Serv.,

     417 F.3d 1299 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Kev, Inc. v. Kitsap Cnty.,

     793 F.2d 1053 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Lady J. Lingerie, Inc. v. City of Jacksonville,

     176 F.3d 1358 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 22, 53, 55

Martin v. City of Struthers, Ohio,

     319 U.S. 141 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

McCullen v. Coakley,

     573 U.S. 464 (2014) . . . . . . . . . . . . . . 25-26, 28, 29, 30, 31, 43, 44, 47

McCutcheon v. Fed. Election Com'n,

     572 U.S. 185 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Nat'l Rifle Ass'n v. Bondi,

    61 F.4th 1317 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 n. 9

Nat'l Rifle Ass'n of Am., Inc. v. City of S. Miami,

    812 So.2d 504 (Fla. 3d DCA 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 49

NetChoice, LLC v. Attorney Gen., Florida,

    34 F.4th 1196 (11th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

Ocheesee Creamery LLC v. Putnam,

    851 F.3d 1228 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Orange Cnty. v. Singh,

    268 So.3d 668 (Fla. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48-49

Packingham v. North Carolina,

    582 U.S. 98 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

Reed v. Town of Gilbert, Ariz.,

    576 U.S. 155 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 23

Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla.,

    337 F.3d 1251 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Saieg v. City of Dearborn,

    641 F.3d 727 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33, 46

Schad v. Borough of Mount Ephraim,

    452 U.S. 61 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25 n. 12

Schleifer by Schleifer v. City of Charlottesville,

    159 F.3d 843 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n. 5

Schneider v. Town of Irvington,

    308 U.S. 147 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Schultz v. Alabama,

    42 F.4th 1298 (11th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 50, 53

Sciarrino v. City of Key W., Fla.,

    83 F.3d 364 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

Sentinel Communications Co. v. Watts,

    936 F.2d 1189 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7-8

Shuttlesworth v. City of Birmingham,

    394 U.S. 147 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

Starbuck v. R.J. Reynolds Tobacco Co.,

    349 F.Supp. 3d 1223 (M.D. Fla. 2018) . . . . . . . . . . . . . . . . . . . . . 8 n. 3

State v. Cafe Erotica, Inc.,

    500 S.E.2d 574 (Ga. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

T. Weston, Inc. v. Mineral Cty., W.Va.,

    2008 WL 3474146 (N.D. W.Va. 2008) . . . . . . . . . . . . . . . . . . . . . . 15

Turner Broad. Sys., Inc. v. F.C.C.,

    512 U.S. 622 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47 n. 20

United Broth. of Carpenters & Joiners of Am. Local 586 v. N.L.R.B.,

    540 F.3d 957 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United States v. Grace,

    461 U.S. 171 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

United States v. O'Brien,

    391 U.S. 367 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . iii, 25, 25 n. 12, 28

United States v. X-Citement Video, Inc.,

    513 U.S. 64 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Valadez v. Paxton,

    553 F.Supp. 3d 387 (W.D. Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Verlo v. Martinez,

    820 F.3d 1113 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 29, 39-40

Village of Schaumburg v. Citizens for a Better Env't,

    444 U.S. 620 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Virginia State Bd. of Pharmacy v.

    Virginia Citizens Consumer Council, Inc.,

    425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 n. 12

Ward v. Rock Against Racism,

    491 U.S. 781 (1989) . . . . . . . . . . . . . . . . 18, 24, 25, 25 n. 12, 26, 28, 35

Wacko's Too, Inc., et al. v. City of Jacksonville, et al,

    Case No.: 3:03-cv-271-J-32MMH (M.D. Fla.) . . . . . . . . . . . . . . . 2 n. 1

Worth v. Harrington,

    __ F.Supp. 3d __,  2023 WL 2745673

    (D. Minn. Mar. 31, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 n. 9

Young v. Am. Mini Theatres, Inc.,

    427 U.S. 50 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio,

    471 U.S. 626 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**Constitution**

U.S. CONST. AMEND. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. CONST. AMEND. II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 n. 9

U.S. CONST. AMEND. XXI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Statutes**

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

§562.13, Fla.Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11 48, 56

§562.13(2)(a), Fla.Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**Rules**

Rule 28.1(e)(2), Fed.R.App.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Rule 31(b), Fed.R.App.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Rule 32(a)(5), Fed.R.App.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Rule 32(a)(6), Fed.R.App.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Rule 32(a)(7)(B), Fed.R.App.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Rule 32(a)(7)(B)(iii), Fed.R.App.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

11th Cir. Rule 27.1(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

**Ordinances**

Chap. 150, Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

Chap. 151, Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

§150.224(c), Jacksonville Code . . . . . . . . . . . . . . . . . . . . 8, 19, 38, 48, 50, 54

§150.224(d), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

§150.224(f), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

§150.224(h), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

§150.224(l), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

§151.214(c), Jacksonville Code . . . . . . . . . . . . . . . . . . . . 8, 19, 38, 48, 50, 54

§151.214(d), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   54

§151.214(f), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   54

§151.214(h), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   51

§151.214(l), Jacksonville Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   54

ORD. No. 2020-74-E, Jacksonville . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

ORD. No. 2022-172-E, Jacksonville . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

## **Other Sources**

National Crime Information Center (NCIC) Website,
https://le.fbi.gov/informational-tools/ncic. . . . . . . . . . . . . . . . . . . . . . . . 54 n. 24

## STATEMENT OF JURISDICTION

This is an appeal from a Final Judgment of the United States District Court for the Middle District of Florida following two bench trials. This Court has jurisdiction pursuant to 28 U.S.C. §1291:

> The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . .

## **PREFACE**

This consolidated appeal involves three suits which separately challenged numerous aspects of Jacksonville's adult entertainment ordinances as well as certain police practices involving the enforcement of those ordinances.

Because the claims in the three suits eventually overlapped almost entirely, this Brief will principally refer to the record in the last-filed case: "Wacko's II" - Case No.: 23-10801-C / District Court Case No. 3:22-cv-798-TJC-MCR.

In those few circumstances where it is necessary to distinguish one case from another, Appellants will use the following citation form:

- (Doc. __ Emperor's) will refer to the docket in Case No.: 23-11273-C / 3:19-cv-1110-TJC-MCR.

- (Doc. __ Wacko's I) will refer to the docket in Case No.: 23-11274-C / District Court Case No. 3:20-cv-303-TJC-MCR.

- (Doc. __ Wacko's II) will refer to the docket in Case No.: 23-10801-C / District Court Case No. 3:22-cv-798-TJC-MCR.

There were two bench trials below addressing different aspects of the legal arguments in two different cases.

The transcript for the bench trial held in <u>Wacko's I</u> on September 18, 2020, appears at Doc. 36 in <u>Wacko's I</u>. References to that transcript will be shown as T-I - ___.

The transcript for the bench trial held in <u>Wacko's II</u> on December 15, 2022, appears at Doc. 39 in <u>Wacko's II</u>. References to that transcript will be shown as T-II - ___.

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

I.    WHETHER   THE   COMPLETE   BAN   ON   EXOTIC   DANCE
PERFORMANCES BY ADULTS UNDER THE AGE OF TWENTY-ONE
VIOLATES THE FIRST AMENDMENT UNDER EITHER STRICT OR
INTERMEDIATE SCRUTINY BASED ON AN OBVIOUS LACK OF
NARROW TAILORING.

II.    WHETHER   §562.13,   <u>FLA.STAT.</u>   PREEMPTS   JACKSONVILLE'S
EFFORTS TO REGULATE THE HIRING OF EXOTIC DANCERS UNDER
THE AGE OF TWENTY-ONE.

III.    WHETHER JACKSONVILLE'S LICENSING SYSTEM FOR EXOTIC
DANCERS IMPOSES AN UNCONSTITUTIONAL PRIOR RESTRAINT
BECAUSE IT FAILS TO PRESERVE THE STATUS QUO PENDING
JUDICIAL REVIEW.

IV.    WHETHER JACKSONVILLE'S LICENSING SYSTEM FOR EXOTIC
DANCERS IMPOSES AN UNCONSTITUTIONAL PRIOR RESTRAINT
BECAUSE THE LICENSING DECISION TAKES TOO LONG.

1

## STATEMENT OF THE CASE

### A.    Course of proceedings and disposition in the Court below

The Emperors Plaintiffs initiated this litigation on September 26, 2019. (Doc. 1 – Emperors). That suit initially sought to enforce a 2004 Consent Order which prohibited the custodial arrest of exotic dancers for municipal ordinance violations.[1]

On February 25, 2020, the City enacted Ordinance 2020-74-E which created a licensing system for exotic dance performers and prohibited performers under the age of twenty-one from receiving a license. (Doc. 1-1 – Wacko's I). The Ordinance was justified by the perceived threat of human trafficking in adult clubs. (Id. at 1-5).

The Wacko's I Plaintiffs challenged Ordinance 2020-74-E in a separate suit filed on March 25, 2020. (Doc. 1 – Wacko's I). That suit was principally brought under the First Amendment, but included state and Federal preemption claims as well as several additional claims brought under state law. In addition to challenging ORD. 2020-74-E, Plaintiffs asserted claims against other provisions in the City's original adult entertainment ordinances (codified as Chapter 150 and 151). The Wacko's I Plaintiffs also asserted "police misconduct" claims which largely

---

[1]  The original Consent Order was entered in Wacko's Too, Inc., et al. v. City of Jacksonville, et al, Case No.: 3:03-cv-271-J-32MMH (M.D. Fla.) (Doc. 23 – April 20, 2004).

mirrored those in <u>Emperors</u>, but included allegations of illegal searches which were unique to those Plaintiffs. (<u>Id</u>.).

The <u>Emperors</u> Plaintiffs amended their Complaint to mirror the <u>Wacko's I</u> claims. (Doc. 18-1 – <u>Emperor's</u>).

The trial Court consolidated <u>Wacko's I</u> and <u>Emperors</u> for purposes of discovery (Doc. 59 at 3 – <u>Wacko's I</u>) and then stayed further proceedings in Emperors. (Doc. 22 – <u>Emperors</u>).

The <u>Wacko's I</u> Plaintiffs initially sought preliminary injunctive relief. (Doc. 2). The parties agreed instead to non-enforcement of the licensing and age requirements followed by briefing of selected facial issues to be determined at a bench trial. (Doc. 21 at 3). The parties agreed to reserve other issues for trial in the ordinary course. (<u>Id</u>.; Doc. 39 at 2-3).

Following extensive briefing (Doc. 2, 23, 25, 28, <u>Wacko's I</u>) a bench trial was conducted on September 18, 2020. (Doc. 35, 36, <u>Wacko's I</u>). On March 1, 2021, the trial Court issued its Order granting a preliminary injunction on most of Appellants' challenges. (Doc. 39, <u>Wacko's I</u>). That Order held that various aspects of the City's licensing system imposed an unconstitutional prior restraint in violation of the First Amendment. (<u>Id</u>. at 11-21). Certain disclosure requirements were found to be overly burdensome (fingerprints) [<u>Id</u>. at 23-24] or preempted by Federal immigration law.

3

[Id. at 36-37]. The Court reserved ruling on whether the age restriction on adult performers was unconstitutional. (Id. at 27-29). However, because the age restriction was tied to the licensing requirement and the licensing provisions were enjoined, the City could not enforce the age prohibition. (Id. at 57, ¶2). Additional issues were reserved for supplemental briefing. (Id. at 57-58).

The parties submitted supplemental briefing on the reserved issues. (Doc. 40, 41, 68, Wacko's I). The parties also briefed those issues which had not yet been presented to the Court for adjudication (primarily involving the constitutionality of various penalty provisions). (Doc. 65, 92, 95, Wacko's I). Those issues were argued to the Court in conjunction with the new issues raised in Wacko's II. (Doc. 32).

The parties settled all of the "police misconduct" claims in mediation. (Doc. 69, Doc. 71-1, Wacko's I). The City agreed to entry of a new Consent Order against custodial arrests (Doc. 88, Wacko's I), stipulated to a variety of police reforms, and paid $60,000 in damages. (Doc. 71-1).

On April 26, 2022, the City enacted Ordinance 2022-172-E in an effort to cure the constitutional defects identified by the Court in its March 1, 2021 Order. (Doc. 1-1). The Ordinance again prohibited performers under the age of twenty-one. (Doc. 1-1 at 4).

On July 22, 2022, a group of clubs and performers - most of whom had also

participated in the <u>Wacko's I</u> case - filed a new lawsuit challenging the constitutionality of ORD. 2022-172-E. (Doc. 1). The <u>Wacko's II</u> Plaintiffs again asserted that the licensing law imposed a prior restraint and that the prohibition against performers under the age of twenty-one was unconstitutional. (<u>Id</u>.).

The City agreed to stay enforcement of the new Ordinance. (Doc. 32 at 2).

The Court entered a briefing schedule to address the new issues asserted in <u>Wacko's II</u>. (Doc. 19). Following additional briefing (Doc. 2, 24, 25, 28, 29) a bench trial was conducted on December 15, 2022. (Doc. 30, 39).

On February 27, 2023, the Court entered its Findings of Fact and Conclusions of Law in <u>Wacko's II</u> which also addressed the remaining issues from <u>Wacko's I</u>. (Doc. 32). The Court found that Ordinance still imposed a prior restraint because it gave the Sheriff unfettered discretion. (<u>Id</u>. at 53-59). The Court also found that most of the penalty provisions were unconstitutionally vague, violated due process through imposition of vicarious criminal liability, or both. (<u>Id</u>. at 36-48). The Court upheld the constitutionality of the under-21 ban against claims brought under the First Amendment, Equal Protection and Occupational Liberty. (<u>Id</u>. at 7-34). However, the Court found that the "trigger language" associated with the under-21

ban was unconstitutionally vague and could not be enforced. (Id. at 8-9, 77).[2]

Judgment was entered in Wacko's I and Wacko's II on February 27, 2023. (Doc. 32; Doc. 97, Wacko's I). The Wacko's II Plaintiffs filed their timely appeal on March 20, 2023. (Doc. 34).

The trial Court granted an unopposed Motion in Wacko's I clarifying that the July 14, 2022 Consent Order was to be incorporated into the Judgment. (Doc. 98, Wacko's I). The Court entered an Amended Judgment on April 6, 2023. (Doc. 100). The Wacko's I Plaintiffs filed their timely appeal on April 14, 2023. (Doc. 101).

The Court granted Emperors' Motion to enter Judgment based on the two permanent injunction orders entered in Wacko's I and Wacko's II. (Doc. 48, 49, Emperors). That Judgment was entered on April 6, 2023 (Doc. 50, Emperors) and a timely appeal was filed on April 14, 2023) (Doc. 51, Emperors).

The City has not filed a cross-appeal in any case.

On May 19, 2023, this Court granted the Appellants' unopposed Motion to Consolidate all three appeals. (Doc. 20, Case No. 23-10801).

---

[2] The trial Court determined that the under-21 issue was not moot because the City intended to readopt that provision. (Doc. 32 at 9). Jacksonville readopted the under-21 ban on an emergency basis one day after entry of judgment. (Doc. 42 at 4; Doc. 42-2).

**B.**   **Statement of the Facts**

Appellants own and operate gentlemen's clubs in Jacksonville Florida. (Doc. 1 at 4-6, 8-10). Most of the Appellants operate "bikini bars" where scantily clad performers provide dance entertainment in alcoholic beverage establishments. (Id.). One of the Appellants – Sinsations – operates a "juice bar" with nude performers, but no alcohol. (Doc. 1 at 8, ¶26). Appellants challenge the constitutionality of ORD. 2020-74-E  (Doc. 1-1, Wacko's I) and ORD. 2022-172-E (Doc. 1-1) as well as older codified regulations (Chapter 150, regulating nude dance facilities and Chapter 151, regulating bikini bars). (Doc. 1 at 52-80, 134-140, Wacko's I).

Each of the Appellants has contracted with performers under the age of twenty-one. (Doc. 1 at 30, ¶67, 40, ¶102). As many as one hundred of their performers were affected by the age ban. (Doc. 1 at 40, ¶102). The individual Plaintiffs, Alexzandria Pellitteri-Allen, Natalie Sanchez, and Neva Clinkscale were all under the age of twenty-one and had performed at Emperor's and Sinsations (Doc. 1 at 7, ¶19;  Doc. 1 at 7, ¶¶ 22-23, Wacko's I).

Appellants' preemption claim and two facial prior restraint arguments  present legal questions for adjudication. With respect to those issues, the facts of this case are largely irrelevant except to establish standing. *See, generally*, Sentinel Communications Co. v. Watts, 936 F.2d 1189, 1197 (11th Cir. 1991) ("In a facial

7

challenge such as this, the facts of the challenging party's case are irrelevant.").

A factual record was developed in connection with §§150.224(c), 151.214(c) - the ban on performers under the age of twenty-one. Discovery showed that the City has never made a human trafficking arrest at any adult entertainment establishment in Jacksonville. (Doc. 67; 67-1; 67-2; 67-3 – <u>Wacko's I</u>). The trial Court took judicial notice of this fact. (Doc. 32 at 27-28 n. 11). The record includes a very thin legislative record, much of which was developed only by the bill's sponsor and never actually considered by the City Commission. (Doc. 30 – <u>Wacko's I</u>). The City acknowledged that it never considered any less restrictive form of regulation than the flat ban on young adult performers:

> The Jacksonville City Council ***did not consider less restrictive age-based alternatives*** because it was presented with the age of 21 based on Council Member Cumber's research. (emphasis added).

(Doc. 41 at 19).[3]

At the bench trial, the parties and the Court discussed a variety of alternative means of regulation including the identification and record-keeping ordinance adopted by the City of Miami Beach after a single incident of trafficking in that

---

[3] This statement is a judicial admission which is binding on the City. *See*, <u>Starbuck v. R.J. Reynolds Tobacco Co.</u>, 349 F.Supp. 3d 1223, 1233 (M.D. Fla. 2018) (Collecting cases).

jurisdiction. (T-1 at 50-51, 104-105, 129-130, 142-143, 148-149, 169; T-II at 28-29, 33-34).

### C.    Statement of the Standard of Review

All of the issues presented in this appeal are subject to *de novo* review. Determinations of the facial constitutionality of a statute are always subject to *de novo* review [Schultz v. Alabama, 42 F.4th 1298, 1311 (11th Cir. 2022)] as are rulings on preemption issues [BellSouth Telecommunications, Inc. v. Town of Palm Beach, 252 F.3d 1169, 1176 (11th Cir. 2001)]. The District Court's conclusions of law following the bench trial are reviewed *de novo* [Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313 (11th Cir. 2011)] as are the "constitutional" facts relevant to those legal determinations. [Flanigan's Enterprises, Inc. of Georgia v. Fulton Cnty., Ga., 596 F.3d 1265, 1276 (11th Cir. 2010)].

## SUMMARY OF THE ARGUMENT

The trial Court erred in upholding Jacksonville's complete ban on exotic dance performances by adults between the ages of eighteen and twenty-one. The record shows that there had never been an arrest for human trafficking at an adult club in Jacksonville. The record further shows that there were abundant alternative means of addressing the perceived problem with trafficking which were less restrictive of speech – including ordinances which had a proven track record elsewhere. Jacksonville conceded that it did not even consider any other alternatives and that it did not pause to evaluate whether its own alternatives (education and licensing) would address the (non-existent) problem.

Bans on speech are heavily disfavored because they are the antithesis of narrow tailoring. The trial Court should have concluded on this record that the law was content-based since the underinclusive law expressly targeted only those engaged in speech rather than any illegal activity. Jacksonville's ban cannot survive strict scrutiny.

In the alternative, the law should have been stricken under intermediate scrutiny. The trial Court improperly deferred to the City's judgment when it conflated the secondary effects doctrine (a legal fiction restricted to the content-based inquiry) with the standards applicable to intermediate scrutiny. The City failed

to meet its burden of proof at every turn. The law was clearly not narrowly tailored given the abundance of less speech-restrictive alternatives. Furthermore, there was only the most tenuous relationship between the government's stated interest and the means chosen to effect that goal. The record shows that the City intentionally chose the most restrictive option – a flat ban – rather than pursuing the sort of time, place and manner restrictions adopted elsewhere in Florida.

The Court also erred in rejecting Appellants' state preemption claim under §562.13, Fla.Stat. The Florida legislature has determined by statute that minors under the age of eighteen can work in bars, including as entertainers. Clearly if minors are not risk in that setting, adults over the age of eighteen would not be.

Two aspects of the City's dancer licensing ordinance impose unconstitutional prior restraints. The City fails to preserve the status quo pending judicial review, giving final effect to an administrative denial. The City also fails to make licensing decisions within a reasonably brief period of time.

The Final Judgments should be reversed outright with respect to these three provisions.

11

**ARGUMENT**

## I.    THE PROHIBITION AGAINST PERFORMERS UNDER THE AGE OF TWENTY-ONE VIOLATES THE FIRST AMENDMENT.

STANDARD OF REVIEW:  This Court reviews a decision following a bench trial *de novo* with respect to conclusions of law while "historical" facts are reviewed for clear error. *See*, Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313 (11th Cir. 2011). However, core "constitutional" facts are reviewed *de novo*. Flanigan's Enterprises, Inc. of Georgia v. Fulton Cnty., Ga., 596 F.3d 1265 (11th Cir. 2010).

### A.    **Introduction**.

In a misguided effort to crack down on human trafficking, the City of Jacksonville has imposed a unique ban which targets only speech rights without establishing any real nexus to the hypothesized crime; it restricts only the speaker and not the offender. The focus on exotic dancer performers – to the exclusion of all other young adults who may be vulnerable to trafficking – is particularly noteworthy given the undisputed fact that there has *never* been an arrest for human trafficking in an adult entertainment establishment in Jacksonville.[4]

The law is unique because it completely bans speech for a segment of the adult population based on the content of that speech. It is unique because it regulates the speech rights of adults based on their age. And it is unique as the only jurisdiction

---

[4] The trial Court took judicial notice of this fact. (Doc. 32 at 27-28 n. 11).

in Florida to abandon traditional time, place and manner restrictions in favor of a complete ban on exotic dance performances for a segment of the adult population.

By its very design, Jacksonville's age-based ban is not narrowly tailored to advance the perceived government interest. There are no alternative avenues for exotic dancers as the law bans them from every venue at all times without exception. The ordinance cannot survive a First Amendment challenge under either strict or intermediate scrutiny.

### B.    Most Courts which have Considered Age-Based Restrictions on Adult's Speech Rights have found that they Violate the First Amendment.

A person over the age of eighteen is entitled to exercise all of his or her constitutional rights, including the right to speak and to promote speech of his own choosing.[5] Among those rights is the right to engage in exotic dance performances as a form of expressive conduct under the First Amendment.[6] The U.S. Supreme

---

[5] Indeed, even minors enjoy most of the same constitutional rights:

> Because "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority," Danforth, 428 U.S. at 74, 96 S.Ct. 2831 [emphasis omitted], all persons, regardless of age, possess these rights under our system.

Schleifer by Schleifer v. City of Charlottesville, 159 F.3d 843, 863 (4th Cir. 1998).

[6] There can be no dispute that the exotic dancing entertainment is entitled to protection under the First Amendment. *See, e.g.*, Barnes v. Glen Theatre, Inc., 501

13

Court has upheld the First Amendment right of adults to access and produce adult entertainment. *See, generally*, <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64, 72 (1994) ("[N]onobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment."); *See, also*, <u>Ginsberg v. State of N. Y.</u>, 390 U.S. 629, 637 (1968) (the Constitution leaves it "to adults to judge and determine for themselves what sex material they may read or see.").

The prevailing view of those courts to have considered age-based restrictions on exotic dance is that such laws are unconstitutional once an individual has reached the age of majority.

In <u>State v. Cafe Erotica, Inc.</u>, 500 S.E.2d 574 (Ga. 1998), Georgia's Supreme Court held that a statute prohibiting citizens under the age of twenty-one from patronizing adult businesses was content-based and failed strict scrutiny:

> Because the regulation at issue is predicated on the content of the regulated speech, it is a content-based restriction which is subject to judicial review under the "strict scrutiny" analysis. (citation omitted).
> …
> In the expansion of the mantle of protection which shields minors from harmful materials to cover those between 18 and 21 years of age, the State has restricted the speaker's audience and has prevented the 18-, 19-, and 20-year-olds from determining what constitutionally-protected sexual material they will view, without providing a compelling state

---

U.S. 560, 565 (1991) ("Several of our cases contain language suggesting that nude dancing of the kind involved here is expressive conduct protected by the First Amendment."); <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 289 (2000) ("[N]ude dancing of the type at issue here is expressive conduct…").

14

interest which justifies taking legislative action restricting free speech. Id. at 576–77.

In Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1283 (10th Cir. 2002) the Tenth Circuit considered a law which banned both patrons and performers from an adult business unless they were over twenty-one. The Court found that there was no evidence to support the claim that increasing the age of patrons and performers would reduce the "secondary effects" thought to be associated with nude dancing. Id. at 1287–89.

In T. Weston, Inc. v. Mineral Cty., W.Va., 2008 WL 3474146 at *11 (N.D. W.Va. 2008), the Court relied on both Essence and Cafe Erotica, to conclude that "the proscription of persons between the ages of eighteen and twenty-one on the premises where live exotic entertainment is offered offends the First Amendment rights of persons in that age group."

The City and the trial Court in the instant case both relied on Doe I v. Landry, 909 F.3d 99 (5th Cir. 2018) which upheld a state statute that prohibited dancers under the age of twenty-one from exposing their buttocks or breasts in a bar. That case is readily distinguishable and was ultimately dismissed as moot.[7] The statute in Doe

---

[7] On remand, the Doe parties stipulated that the case had become moot and the case was dismissed without prejudice. Doe I et al v. Marine-Lombard, Case No.: 2:16-cv-14876-CJB-KWR (E.D. La. Sept. 30, 2019), Stipulation of Dismissal (Doc. 75).

was limited only to nudity in bar settings, whereas the Jacksonville ordinance includes venues which do not sell alcoholic beverages as well as those in which performers are clothed. In addition, the <u>Doe</u> plaintiffs attacked the statute on vagueness and overbreadth grounds rather than advocating for strict scrutiny of a content-based law or pursuing narrow tailoring under intermediate scrutiny, both of which are asserted in this litigation.

Other than <u>Doe</u>, the only other cases on this subject to have upheld a similar law involve a Texas statute which forbids adult entertainment establishments from employing anyone under the age of twenty-one.[8] *See*, <u>DC Operating, LLC v. Paxton</u>, 586 F.Supp. 3d 554 (W.D. Tex. 2022) (Appeal pending in the Fifth Circuit under Case No.: 22-50612) and <u>Valadez v. Paxton</u>, 553 F.Supp. 3d 387 (W.D. Tex. 2021). Those cases both involve denials of preliminary injunctions and are not merits decisions. Appellants maintain that the two Texas District Court decisions were wrongly decided for all the reasons addressed below with respect to Jacksonville's

---

[8] The trial Court also cited to <u>American Entertainers, L.L.C. v. City of Rocky Mount, N.C.</u>, 888 F.3d 707 (4th Cir. 2018) which upheld a law prohibiting persons under the age of 21 from owning a strip club which serves alcohol. The trial Court correctly noted that <u>American Entertainers</u> did not analyze that ban under the First Amendment but instead found that there was a rational basis to restrict ownership of alcoholic beverage licenses. (<u>Wacko's I</u> Doc. 39 at 28, n. 15)

16

Ordinance.[9]

The consensus of the reported cases strongly support Appellants' view that the prohibition against performers under the age of twenty-one is a content-based law which cannot survive strict scrutiny. As the decision in <u>Essence</u> makes clear, such laws cannot survive intermediate scrutiny either - even when based on the doctrine of adverse secondary effects. Here, there wasn't even an attempt by the City to comply with the requirements of the narrow tailoring prong. The City all but concedes to the unconstitutionality of the ordinance.

---

[9] The trial Court instructed the parties to brief the question of whether Jacksonville's ban on performers under the age of twenty-one is comparable to age-associated limits on firearms. (Doc. 39 at 28). The legal analysis for First and Second Amendment claims is distinctly different – particularly the unique focus on historical regulations as a necessary component of Second Amendment, which finds no counterpart in First Amendment cases. (Doc. 40 at 15- 17). Although the validity of an age-based restriction on firearms is now established in this Circuit, there remains significant disagreement on this point among the Federal Courts generally. *Compare*, <u>Nat'l Rifle Ass'n v. Bondi</u>, 61 F.4th 1317, 1332 (11th Cir. 2023) with <u>Fraser v. Bureau of Alcohol, Tobacco, Firearms and Explosives</u>, _ F.Supp. 3d __, 2023 WL 3355339 at *24 (E.D. Va. May 10, 2023) and <u>Worth v. Harrington</u>, No. 21-CV-1348 (KMM/LIB), __ F.Supp. 3d __, 2023 WL 2745673 at *22 (D. Minn. Mar. 31, 2023). It is also important to note that the age-based restrictions approved thus far in the Eleventh Circuit are limited to the purchase of firearms and do *not* extend to the ownership or possession of firearms. Accordingly, the firearms restrictions which have been approved fall far short of a complete ban and are loosely comparable to the time, place and manner restrictions encountered in free speech cases.

17

**C.** **The Prohibition against Performers under the Age of Twenty-One is Content-Based and Cannot Survive Strict Scrutiny.**

Jacksonville's ban on exotic dancer performers under the age of 21 is content-based because the regulation turns on expression (an erotic message) and is expressly justified by a desire to limit that expression (as an indirect means of limiting exposure to human traffickers). The Supreme Court tells us that such laws are content based:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.…
>
> Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be "'justified without reference to the content of the regulated speech,'" or that were adopted by the government "because of disagreement with the message [the speech] conveys," Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Those laws, like those that are content based on their face, must also satisfy strict scrutiny.

Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163–64 (2015).

Jacksonville's law not only targets dance to the exclusion of all other forms of expressive communication, but it singles out a single genre of dance performances: exotic dance. Other forms of dance, including ballet, theater presentations and ballroom dancing are all excluded from the age ban. In addition, the ordinance is not triggered solely by age as it does not limit the activities of

18

owners, patrons and other employees who may be under twenty-one.

As content-based enactments, §§150.224(c) and 151.214(c) are subject to strict scrutiny, requiring both a compelling government interest and proof of narrow tailoring:

> Because the Town's Sign Code imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, "'which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest,'" (citations omitted).

Reed, 576 U.S. at 171. Like most laws, Jacksonville's ordinance cannot survive strict scrutiny and the City made no effort to defend on this basis.

Instead, the City argues that its law is not content-based because it targets only the secondary effects of exotic dance. The secondary effects doctrine relies on the legal fiction that local governments are not actually regulating speech, but are attempting to ameliorate deleterious effects in the community, such as crime or urban blight. See, generally; City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986) ("[T]he Renton ordinance is aimed not at the content of the films shown at 'adult motion picture theatres,' but rather at the secondary effects of such theaters on the surrounding community."); Compare, City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 448 (2002) (J. Kennedy concurring) (Describing the doctrine of secondary effects as "something of a fiction").

19

The trial Court accepted the City's secondary effects argument and therefore applied intermediate scrutiny instead of strict scrutiny:

> As in <u>Renton</u>, the age restriction here does not aim at the suppression of free speech - it instead aims to curtail the negative secondary effects of having vulnerable eighteen to twenty-year-old performers exposed to human and sex trafficking. "[R]egulations that target undesirable secondary effects of protected expression are deemed content-neutral, and courts review them with an intermediate level of scrutiny known as the <u>O'Brien</u> test." (citation omitted).

(Doc. 32 at 12). This was error.

There is nothing about Jacksonville's age-based ban which resembles the sort of regulations upheld under the secondary effects doctrine. Indeed, the law stumbles right out of the gate as regulations justified by secondary effects cannot ban erotic speech, but are confined to ordinary time, place and manner restrictions. *See,* <u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla.</u>, 337 F.3d 1251, 1264 (11th Cir. 2003) ("[F]irst, the court must determine whether the ordinance constitutes an invalid total ban or merely a time, place, and manner regulation").

All of the foundational Supreme Court cases addressing secondary effects presume that the law in question does not impose a ban on speech, but merely regulates it or disperses it. In <u>Young v. American Mini Theatres, Inc.</u>, 427 U.S. 50, 73 (1976) the Court specifically noted that "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful

20

speech." Schad v. Borough of Mount Ephraim, 452 U.S. 61 (1981) acknowledged

that Young would have been decided differently if the law involved a ban on speech:

> The restriction did not affect the number of adult movie theaters that
> could operate in the city; it merely dispersed them. *The Court did not
> imply that a municipality could ban all adult theaters* - much less all
> live entertainment or all nude dancing - from its commercial districts
> citywide. (emphasis added).

Id. at 7. Every case since has held to that same principle. *See, e.g.*, Renton, 475 U.S.

at 46 ("The Renton ordinance, like the one in American Mini Theatres, does not ban

adult theaters altogether…").

The City argued below that the prohibition against performers under the age

of twenty-one is only a temporary ban that "they'll grow out of". (T-II at 46: "Mr.

Feiser: My position is it's kind of not a ban. It's really more – it's just an age

restriction in certain types of establishments… It certainly doesn't ban them for life.

They just have to be 21 to dance in these places."). The simple rejoinder to that

position is that the Ordinance imposes a complete ban for any adult under the age of

twenty-one, including those Plaintiffs who had performed as exotic dancers. As to

those individuals, the ban is total, complete and unavoidable.[10]

---

[10] Temporary bans against adult entertainment in the form of moratoria are routinely
declared to be unconstitutional. *See, e.g.*, Howard v. City of Jacksonville, 109
F.Supp. 2d 1360 (M.D. Fla. 2000); ASF, Inc. v. City of Seattle, 408 F.Supp. 2d 1102
(W.D. Wash. 2005).

It is also noteworthy that Jacksonville's ban does not resemble other regulations which have been upheld under the secondary effects doctrine. The law is not a zoning regulation which restricts the locations where exotic dance can occur. *Compare*, <u>Renton</u>, *supra*. It does not adopt hours of operation to govern the times when such performances can be offered. *Compare*, <u>Lady J. Lingerie, Inc. v. City of Jacksonville</u>, 176 F.3d 1358, 1365 (11th Cir. 1999). The Ordinance does not include "manner" restrictions such as the minimum dress required, specifications for the stage, or buffers between patrons and performers. *Compare*, <u>Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee</u>, 274 F.3d 377, 396–98 (6th Cir. 2001). The ordinance is not tethered to the sale of alcohol and is not justified by the Twenty-First Amendment. *Compare*, <u>Curves, LLC v. Spalding Cnty., Ga.</u>, 685 F.3d 1284, 1289 (11th Cir. 2012). Jacksonville's ordinance is a content-based law and should have been analyzed as one.

### D.    <u>The Prohibition against Performers under the Age of Twenty-One is Underinclusive.</u>

A singular feature of Jacksonville's Ordinance is that fact that it does not directly penalize actual human traffickers in any way nor does it protect the overwhelming number of eighteen to twenty-one  year olds who might be vulnerable to their predations. A twenty year old is free to patronize one of Appellants' clubs.

A nineteen year old can be employed as a deejay, or a bar back, or as security. An eighteen year old can own a club and qualify for an adult entertainment establishment license. The only restriction is on performers – the individuals most closely tied to speech rights.

The doctrine of underinclusiveness focuses on exceptions to determine whether the structure of a law incorporates subtle content-based distinctions or encourages view-point discrimination. *See*, Brown v. Entm't Merchants Ass'n, 564 U.S. 786, 802 (2011) ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."); *See, also*, Reed, 135 S.Ct. at 2232 ("[A] 'law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited.'").

There is no substantial reason to censor the First Amendment rights of adult performers when other adults in the same physical setting are unregulated. Any rational regulation would be adopted city-wide so that trafficking is targeted wherever vulnerable victims may be located - hotels,[11] schools and bus stops come

---

[11] Statistics show that hotels are a hotspot for human trafficking and, in particular, for sex trafficking. *See,* C.T. v. Red Roof Inns, Inc., 2:19-CV-5384, 2021 WL 2942483 at *3 (S.D. Ohio July 1, 2021) ("Polaris, the organization that runs the U.S.

to mind.

The sole focus on those who engage in exotic dance performances strongly suggests that the communication was itself the target rather than any threat to the performer. As in <u>Brown</u>, there is a "serious doubt" that the human trafficking justification is anything but a fig leaf hiding a content-based motivation.

### E.  **The Prohibition against Performers under the Age of Twenty-One Cannot Survive Intermediate Scrutiny because it is not Narrowly Tailored.**

Even if the ban on performers under the age of twenty-one is analyzed under intermediate scrutiny, the law cannot survive attack because it is not narrowly tailored and is only tangentially related to the City's interest in thwarting human traffickers. "[T]o survive intermediate scrutiny, a restriction on speech or expression must be 'narrowly tailored to serve a significant governmental interest.'" <u>City of Austin v. Reagan Nat'l Advert. of Austin, LLC</u>, 142 S.Ct. 1464, 1475-76 (2022), *quoting* <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791 (1989). "Narrow tailoring in this context means that the regulation must be 'no greater than is essential to the furtherance of [the government's] interest.'" <u>NetChoice, LLC v. Attorney Gen.,</u>

---

National Human Trafficking Hotline... noted that 75 percent of all human trafficking survivors came into contact with hotels at some point, meaning that traffickers of all stripes rely on hotels to help facilitate illicit ventures, including sex trafficking and labor trafficking.").

Florida, 34 F.4th 1196, 1227–28 (11th Cir. 2022) *quoting* U. S. v. O'Brien, 391 U.S. 367, 377 (1968).

The parties do not disagree over the appropriate elements of intermediate scrutiny. The "O'Brien test" asks whether a law "is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. O'Brien, 391 U.S. at 37. The latter prong incorporates the notions of narrow tailoring and alternative avenues of communication. *See*, Ward, 491 U.S. at 791 (Providing alternative formulation of O'Brien which includes the latter two factors).[12]

Case law includes a number of descriptions of narrow tailoring. McCullen v.

---

[12] There are multiple formulations of intermediate scrutiny ranging from O'Brien to Ward to Renton to Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557 (1980) (for generic commercial speech). While there may be subtle differences between the various tests, Appellants maintain that none would be determinative in this case and that they can be treated as interchangeable for purposes of this appeal. In addition, Appellants will often rely on cases applying intermediate scrutiny to commercial speech. Commercial speech is actually subject to less protection than exotic dance as untruthful speech can be prohibited outright whereas dance is subject only to time, place and manner restrictions. *Compare*, Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771–72 (1976) (Deceptive or false commercial speech is not protected) *with* Schad, 452 U.S. at 66 (Prohibition against live dance was unconstitutional).

Coakley, 573 U.S. 464 (2014) provides a useful one:

> For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not "burden substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S., at 799, 109 S.Ct. 2746. Such a regulation, unlike a content-based restriction of speech, "need not be the least restrictive or least intrusive means of" serving the government's interests. Id., at 798, 109 S.Ct. 2746. But the government still "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."

McCullen, at 486; *Compare*, McCutcheon v. Fed. Election Com'n, 572 U.S. 185, 218 (2014) *quoting* Board of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989) ("In the First Amendment context, fit matters. Even when the Court is not applying strict scrutiny, we still require 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' ... that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.'").

The government bears the burden of showing that its chosen means of regulation does not unduly burden speech:

> It is well established that "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 71, n. 20, 103 S.Ct. 2875, 2883, n. 20, 77 L.Ed.2d 469 (1983); Fox, 492 U.S., at 480, 109 S.Ct., at 3035. This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on

26

commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.

Edenfield v. Fane, 507 U.S. 761, 770–71 (1993).

This Court's decision in FF Cosmetics FL, Inc. v. City of Miami Beach, 866 F.3d 1290 (11th Cir. 2017) shows precisely why Jacksonville's ban cannot be considered narrowly tailored under any standard:

> [T]here is a significant distinction between failing to employ less-restrictive means and completely disregarding obvious less-burdensome alternatives. While our analysis is "limited to whether the means are reasonably and narrowly drawn to further the objective," and we "should not attempt to speculate as to whether less restrictive means exist," Harnish v. Manatee Cty., 783 F.2d 1535, 1540 (11th Cir. 1986), "if there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417 n.13, 113 S.Ct. 1505, 1510 n.13, 123 L.Ed.2d 99 (1993). By ignoring far less restrictive and precise means, it is likely that an ordinance burdens substantially more speech than necessary.

FF Cosmetics at 1300–01; See, also, Village of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 639, 100 S.Ct. 826 (1980) (Invalidating a prohibition against door-to-door canvassing because "the provision permitting homeowners to bar solicitors from their property by posting signs... suggest[s] the availability of less intrusive... measures to protect privacy."); Boos v. Barry, 485 U.S. 312, 329, 108 S.Ct. 1157, 1168 (1988) ("[The statute] is not narrowly tailored; a less restrictive alternative is readily available.").

**(1)    The Trial Court Improperly Conflated its Analysis of Adverse Secondary Effects with the <u>O'Brien</u> Test Applicable to Intermediate Scrutiny.**

The trial Court went badly awry because it confused the highly deferential review afforded the threshold question of content-based legislation under the secondary effects doctrine[13] with the far more searching inquiry required by <u>O'Brien</u>– especially with regard to narrow tailoring. The secondary effects doctrine has nothing whatsoever to say about narrow tailoring because that inquiry occurs *before* the consideration of narrow tailoring under <u>O'Brien</u>. *See*, <u>McCullen v. Coakley</u>, 573 U.S. 464, 478 (2014) ("The content-neutrality prong of the <u>Ward</u> test is logically antecedent to the narrow-tailoring prong, because it determines the appropriate level of scrutiny.").

Once the decision is made to apply intermediate scrutiny – because the law passes the threshold question of content-neutrality -  the ordinary <u>O'Brien</u> standards apply in full force. *See*, <u>McCullen</u>, 573 U.S. at 486, *quoting* <u>Ward</u> ("Even though the Act is content neutral, it still must be "narrowly tailored to serve a significant governmental interest."). Regulations of adult businesses are treated just like any

---

[13] Appellants acknowledge that the secondary effects inquiry is extraordinarily deferential to government, being satisfied by the slightest of proofs. *See, e.g.*, <u>Daytona Grand, Inc. v. City of Daytona Beach</u>, 490 F.3d 860, 881 (11th Cir. 2007) (Holding that informed "common sense" was sufficient to meet the secondary effects burden).

28

other time, place and manner restriction under intermediate scrutiny. *See, e.g.*, Renton, *supra*, Barnes, *supra*. Adult businesses are not "red headed stepchildren" with subordinate rights. Intermediate scrutiny is intermediate scrutiny is intermediate scrutiny.

The trial Court suggested that it would not be appropriate to second guess the decisions of local legislators:

> Absent a constitutional violation, it is not the Court's role to stand in place of the City or to opine on whether the age restriction represents sound public policy. The City has presented sufficient support for its legislation by showing a link between its interest in combatting negative secondary effects and the age restriction, which furthers that interest. "[M]unicipalities must be given a reasonable opportunity to experiment with solutions to address the secondary effects of protected speech."

(Doc. 32 at 31). That is *not* a correct statement of the law.

Instead, courts have an affirmative obligation to carefully review the government's evidence of narrow tailoring:

> The Supreme Court has ***not*** discouraged courts from considering alternative approaches to achieving the government's goals when determining whether a content-neutral regulation is narrowly tailored to advance a significant government interest. [*citing* McCullen v. Coakley, 573 U.S. 464, 486 (2014); emphasis added].

Verlo v. Martinez, 820 F.3d 1113, 1135 (10th Cir. 2016); *Compare*, Casey v. City of Newport, R.I., 308 F.3d 106, 116 (1st Cir. 2002) (Striking prohibition against amplified singing for lack of narrow tailoring and critiquing the District Court

because "the court did not engage in any balancing analysis, deferring instead to the unsupported assertion of the City that the no-amplification restriction … was the only effective means of addressing the noise problem.").

This careful inquiry is necessary to guard against legislation that was enacted out of expediency rather than careful consideration of speech rights:

> The tailoring requirement does not simply guard against an impermissible desire to censor. The government may attempt to suppress speech not only because it disagrees with the message being expressed, but also for mere convenience. Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily "sacrific[ing] speech for efficiency." (citation omitted).

McCullen, 573 U.S. at 486). [14]

It is axiomatic that the government *always* bears to burden of proving the constitutionality of its laws when challenged under the First Amendment. *See, e.g.*, FF Cosmetics, 866 F.3d at 1299 ("The City bears the burden of demonstrating that Section 74-1 is appropriately tailored in light of the substantial interests it seeks to

---

[14] The City infantilizes adult exotic dance performers as it assumes that they are unable to make decisions for themselves whether to speak or to refrain from speaking. It is incongruous to allow eighteen years olds to marry, vote, and put their lives on the line through military service, but then conclude that they lack the maturity to decide whether to dance.

30

achieve."). Proper allocation of that burden leads inexorably to the conclusion that Jacksonville's law is unconstitutional.

### (2)    A Flat Ban on Speech is, by Definition, not Narrowly Tailored

Appellants have already explored the significance of the City's total ban on under twenty-one performers in the context of strict scrutiny. When it comes to intermediate scrutiny, a ban on speech relates to the question of narrow tailoring because a ban is the very antithesis of narrow tailoring.  "[A]n ordinance warrants intermediate scrutiny only if it is a time, place, and manner regulation and *not a ban*." Alameda Books., 535 U.S. at 443 (2002).

The Supreme Court has routinely stricken bans on speech when lesser means of regulation could accomplish the government's goals. *See, e.g.*, Martin v. City of Struthers, Ohio, 319 U.S. 141, 147 (1943) (Striking ordinance that prohibited all door-to-door solicitations because "[t]he dangers of distribution can so easily be controlled by traditional legal methods"); Schneider v. Town of Irvington, 308 U.S. 147 (1939) (Striking down blanket prohibitions against distributing handbills).

The Supreme Court has held that a ban on speech can be narrowly tailored "but *only* if each activity within the proscription's scope is an appropriately targeted evil." Frisby v. Schultz, 487 U.S. 474, 485–86 (1988); *Compare*, City Council v. Taxpayers for Vincent, 466 U.S. 789, 808 (1984) (A law restricting speech must "do

no more than eliminate the exact source of the evil it sought to remedy"). Subsequent cases have emphasized that speech bans cannot be upheld unless there is no effective alternative to the ban. *See, e.g.*, United States v. Grace, 461 U.S. 171 (1983) (Striking ban on flags and banners on the grounds of the Supreme Court itself); Packingham v. North Carolina, 582 U.S. 98, 101 (2017) (Striking ban on sex offenders' access to social media sites justified as a mean of protecting children).

Jacksonville's law is not supportable absent a showing that performers under the age of twenty-one will almost certainly be victimized unless a ban on their speech is adopted. The record below does not establish that young adult exotic dance performers are uniquely vulnerable to being trafficked. Rather, the record shows that the percentage of exotic dance performers *of any age* who are victims of trafficking is not merely low or insubstantial; *it is zero*.[15]

The City is left to argue that it reasonably believes that younger adults might be more susceptible to trafficking than adults over the age of twenty-one even though

---

[15] This should not be a shocking statistic. After all, the City's legislative record also showed that the overwhelming majority of trafficking victims nationwide were solicited over the Internet (87.7%) and that strip clubs are associated with sex trafficking only 0.6% of the time. (Doc. 30-6 at 25).

the record shows otherwise.[16] That theoretical approach is not sufficient to support a ban on speech. *See,* Saieg v. City of Dearborn, 641 F.3d 727, 739 (6th Cir. 2011) *quoting* Bay Area Peace Navy v. United States, 914 F.2d 1224, 1228 (9th Cir. 1990) ("'[M]ere speculation about danger' is not an adequate basis on which to justify a restriction of speech."); Brewer v. City of Albuquerque, 18 F.4th 1205, 1255 (10th Cir. 2021) ("[A] bald assertion by the government that an ordinance is not substantially broader than necessary will not ordinarily be sufficient to satisfy the narrow-tailoring inquiry or render unnecessary an inquiry into less-burdensome alternatives.").[17]

---

[16] At trial the Court noted that the City's own records show the greatest risk was to *minors* of 14-17 and *not to adults*. T-I at 96-97; S*ee, also*, Doc. 32  at 23. More telling still is the legislative finding in the Ordinance itself:

> WHEREAS, research studies have identified the average age at which a person in the United States enters the sex trade for the first time is *age seventeen (17)*…    (emphasis added)

(Doc. 1-1 at 4). There is no support for the notion that performers over the age of eighteen are uniquely at risk.

[17]    The City's assumptions raise another uncomfortable question. The City's legislative record reflected that 19% of human traffic victims nationwide are between the ages of 22-25. (T-I at 96). If age is an important risk factor, one must ask why the City chose to expose those slightly older, but still vulnerable, adults to traffickers without any protections. Had the City enacted a "normal" time, place and manner restriction like those found in other jurisdictions – such as requiring additional lighting or security – it could have protected a larger segment of the population without banning any speech at all.

The City's approach to human trafficking problem is to reduce the opportunities for contact between traffickers and their potential victims. The means chosen to implement this policy is to prohibit speech by those potential victims so that they will not encounter traffickers in their audience. That is not a permissible tactic under the First Amendment. *Compare*, Ashcroft v. Free Speech Coal., 535 U.S. 234, 255 (2002) ("The Government may not suppress lawful speech as the means to suppress unlawful speech."). A ban is never justified where only a small number of speakers are associated with the evil the government claims to target. *See, e.g.,* Packingham, *supra*; Initiative & Referendum Inst. v. U.S. Postal Serv., 417 F.3d 1299, 1307–08 (D.C. Cir. 2005) ("[S]ince the problems the government identifies arise only 'occasionally' and 'at times,' the across-the-board ban on signature solicitation necessarily bars much solicitation that is not disruptive…. Thus, a 'substantial portion of the burden on speech does not serve to advance' the government's content-neutral goals." (citations omitted)).

In Jacksonville, exotic dancers under twenty-one have no other venue where they can engage in their chosen speech. The ban is in effect every day, everywhere and under every circumstance. If those individuals wish to get their message out, they will literally have to leave the jurisdiction until they turn twenty-one. The lack

34

of alternative avenues of communication is yet another reason why Jacksonville's ban fails intermediate scrutiny.

**(3)    The Ban on Performers under the Age of Twenty-One Fails to Provide any Alternative Avenues of Communication.**

A law restricting free speech cannot survive intermediate scrutiny unless it provides alternative avenues of communication so that speakers find an outlet for their message. *See*, Ward, 491 U.S. at 791 ("[G]overnment may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions… leave open ample alternative channels for communication of the information." (citation omitted)).[18] Every Supreme Court case to have addressed adult entertainment establishments regulations has insisted that such laws must preserve alternative avenues. *See*, *e.g.*, Renton, 475 U.S. at 47 ("[C]ontent-neutral" time, place, and manner regulations are acceptable so long as they … do not unreasonably limit alternative avenues of communication.).

A ban on speech necessarily means that there are no alternative avenues of communication available. *See, e.g.*, Fly Fish, Inc. v. City of Cocoa Beach, 337 F.3d

---

[18] The ban on residential protestors in Frisby was tempered by the availability of alternate forums: protestors could simply move down the street or relocate to a public park. *See,* Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 956 (9th Cir. 2011).

1301, 1312 (11th Cir. 2003) ("Instead of leaving open ample alternative means of communication for Sassy's erotic message, the actions taken by Cocoa have effectively zoned Sassy's out of existence."); *See, also*, United Broth. of Carpenters & Joiners of Am. Local 586 v. N.L.R.B., 540 F.3d 957, 969 (9th Cir. 2008) ("Even if we held the signage ban to be narrowly tailored to serve a significant interest, it would fail intermediate scrutiny because it fails to leave open ample alternatives for communication.").

Jacksonville is attempting to ameliorate the supposed problem of human trafficking at gentlemen's clubs by eliminating the speech rather than the secondary effects of trafficking. That approach is utterly incompatible with narrow tailoring. *See*, Alameda Books, 535 U.S. at 450 (2002) (J. Kennedy concurring) ("It is no trick to reduce secondary effects by reducing speech or its audience; but a city may not attack secondary effects indirectly by attacking speech."); *See, also*, 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 501-04 (1996) ("[C]omplete speech bans, unlike content-neutral restrictions on the time, place, or manner of expression, … are particularly dangerous because they all but foreclose alternative means of disseminating certain information.").

36

**(4)     There are Obvious Less Intrusive Means of Regulation than Jacksonville's Ban on Performers under the Age of Twenty-One.**

The case law is clear that a local government cannot ignore obvious alternative means of regulation that will advance the government's interest without burdening speech so severely. *See*, City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417 n. 13, 113 S.Ct. 1505, 1510 (1993) ("[I]f there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable."). Courts can and must examine obvious alternatives pursued in other communities, reported in the case law, utilized by the government in other contexts, and or even suggested by common sense. *See*, FF Cosmetics, 866 F.3d at 1301 ("We need not speculate about potential alternatives because this preliminary record is replete with numerous and obvious less-burdensome options."). Where such alternatives are readily available, courts are compelled to strike a more restrictive regulation:

> "[I]f there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417 n.13, 113 S.Ct. 1505, 1510 n.13, 123 L.Ed.2d 99 (1993). By ignoring far less restrictive and precise means, it is likely that an ordinance burdens substantially more speech than necessary. *See* Fox, 492 U.S. at 479, 109 S.Ct. at 3034.

37

FF Cosmetics, 866 F.3d at 1300–01;  *See, also*, Ocheesee Creamery LLC v. Putnam, 851 F.3d 1228, 1240 (11th Cir. 2017) (Striking prohibition on use of the term "skim milk" where the State "disregard[s] far less restrictive and more precise means").

In this case, Appellants point to three complementary sources to show that less restrictive – but equally effective - regulations are commonplace. First, Jacksonville itself adopted some sensible precautions for exotic dancers to protect them against potential trafficking. Those regulations include the requirement that performers take a human trafficking class.[19] before obtaining a license (§§150.224(c) / 151.214(c)) and that all performers submit to a criminal background check (Id.; *See, also*, §§150.224(l) / 151.214(l)). As this Court observed in FF Cosmetics:

> We need not speculate about potential alternatives because this preliminary record is replete with numerous and obvious less-burdensome options. The City itself offered these alternatives for the trial court's consideration. …. The City offered no explanation why it did not even consider these less-restrictive alternatives, which currently regulate charities, artists, and vendors, or why these alternatives could not also be used to regulate commercial solicitation.

---

[19] Again, to show the disconnect between the purported government interest and the regulation ultimately put into place, the education requirements apply only to adults over the age of twenty-one (*i.e.* those performers whom the City has determined are not at risk of being trafficked). In contrast, there is no educational outreach to those individuals who are actually in the age group the City believes are vulnerable – adults between the ages of eighteen and twenty.

38

FF Cosmetics, 866 F.3d at 1301.

In addition to the protections actually put into place by the City, a host of alternative remedies short of a ban come readily to mind. Those alternatives include better education, hiring more law enforcement officers or requiring private businesses to adopt additional security measures, such as exterior lighting or surveillance cameras. At the bench trial. Appellants suggested these alternatives and more:

> So, for instance, rather than banning speech by performers between the age of 18 and 21, could we have an education requirement? Could we say they have to wear more clothing than other dancers? Could we say that they have to report in at the end of every shift, that there are special officers assigned to police this? You could come up with just numerous situations.
>
> The requirement of human-trafficking courses in general, or posters like the State of Florida requires, these are all less-intrusive means that one would expect the City to have explored. And the record is absolutely silent about that. [T-1 at 130].
> …
> Obvious ones include training, education, maybe enhanced supervision. You could get a little more creative, I guess, and say that maybe people who are under 21 could only dance during daylight hours, or perhaps they'd have to check in and check out specially. [T-1 at 169].

(T-1 at 130, 169).

While the Court is not bound to impose those alternative forms of legislation on the City, case law shows that it is appropriate to consider them when determining

whether the challenged law is narrowly tailored. *See, e.g.*, <u>Verlo</u>, 820 F.3d at 1135 ("[W]hen considering content-neutral regulations, the Court itself has examined possible alternative approaches to achieving the government's objective to determine whether the government's chosen approach burdens substantially more speech than necessary."). As this Court has observed, "an abundance of targeted alternatives may indicate that a regulation is broader than necessary." <u>Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale</u>, 11 F.4th 1266, 1296 (11th Cir. 2021). The City cannot meet its burden of proof simply by declaring that those other methods would be ineffectual. *See*, <u>McCullen</u>, 573 U.S. at 494 ("Respondents have but one reply: 'We have tried other approaches, but they do not work.'… We cannot accept that contention.").

Finally, it would be useful to consider real world examples of how other communities have dealt with the issue of trafficking. The case of <u>Club Madonna Inc. v. City of Miami Beach</u>, 42 F.4th 1231 (11th Cir. 2022) represents a prime example. That rare circumstance involved a young performer in an adult entertainment establishment who was actually a victim of human trafficking. The City of Miami Beach did not react by banning all young adult from performing. Instead, it adopted an enhanced identification and record keeping regime specifically intended to combat human trafficking. That system has been in place since 2014 and has

apparently worked fine for the City. Id. at 1238-39. There is no reason why a similar system could not guard against human trafficking in Jacksonville - a jurisdiction where there has never been a trafficking arrest in an adult club.

In FF Cosmetics this Court struck down a limited ban on face-to-face solicitations for lack of narrow tailoring. The Court examined one of its earlier cases which upheld a less restrictive means of regulating solicitations in Key West. Miami Beach could not answer the obvious question why it did not adopt a court-approved system from a comparable tourist area which better protected First Amendment rights. Id. at 1301 ("Comparing Section 74-1 to the Key West ordinance at issue in Sciarrino v. City of Key West further highlights the existence of numerous and obvious less-burdensome alternatives…. Again, here, the City failed to even address the potential viability of such a system.").

Jacksonville has not explored any of those alternatives despite the fact that they are obvious and effective. That is particularly true with respect to Miami Beach's human trafficking ordinance which survived both a constitutional challenge and the crucible of the real world.

### (5)    No other Jurisdiction in Florida has Adopted an Age-Based Ban on Adult Performers.

The Supreme Court has held that local governments are not free to ignore

41

existing laws on the books or laws in force in other jurisdictions which might effectively address their interests without overburdening speech. *See,* McCullen, 573 U.S. at 492–94 (The State's interest "can readily be addressed through existing local ordinances."); *See, also,* Billups v. City of Charleston, S.C., 961 F.3d 673, 689 (4th Cir. 2020) ("[W]e cannot simply accept the City's assurances that those other ordinances would be too difficult to enforce or would not sufficiently safeguard its interest…"). We know that the City of Miami Beach chose not to enact a ban on young adult performers when it was faced with an instance of actual trafficking. It is appropriate to ask, therefore, whether any other local government in Florida has done so.

The answer is "no":

> THE COURT: … Are there other counties in Florida where you have to be 21 to be an exotic dancer? Do you know the answer to that question?
>
> MR. TEAL:  I'm not aware of any, Your Honor.

T-I at 104; *See, also*, T-I at 105.

The fact that Jacksonville's age-based ban is a unique outlier in Florida strongly suggests that the City did not consider any less restrictive forms of regulation:

> [W]e note that the Act is truly exceptional: Respondents and their amici identify no other State with a law that creates fixed buffer zones around

abortion clinics. That of course does not mean that the law is invalid. It does, however, raise concern that the Commonwealth has too readily forgone options that could serve its interests just as well, without substantially burdening the kind of speech in which petitioners wish to engage.

McCullen, 573 U.S. at 490. And that is precisely what we see on this record.

### (6)    The City Failed to Consider any Less Restrictive Regulations

To this point, Appellants have made a vigorous showing that there are many alternative regulations available to the City which fall well short of a ban on speech while actually working in the real world. However, it must be remembered that Appellants do *not* bear the burden of showing that the law fails the narrow tailoring prong. Rather, the burden is always on the City to demonstrate that its ordinance is narrowly tailored. *See*, Edenfield, 507 U.S. at 770–71; FF Cosmetics, 866 F.3d at 1299.

When a government fails to meet that burden, or where the record shows that the government did not even make the effort, the law must be stricken as unconstitutional:

> To prove that a content-neutral restriction on protected speech is narrowly tailored to serve a significant governmental interest, the government must, inter alia, present evidence showing that - before enacting the speech-restricting law - it "seriously undertook to address the problem with less intrusive tools readily available to it." *See* McCullen, 573 U.S. at 494, 134 S.Ct. 2518. In other words, the government is obliged to demonstrate that it actually tried or considered

43

less-speech-restrictive alternatives and that such alternatives were inadequate to serve the government's interest. Id.; *see also* Reynolds, 779 F.3d at 231-32. The government's burden in this regard is satisfied only when it presents "actual evidence supporting its assertion[s]."

Billups, 961 F.3d at 688; *See, also*, McCullen, 573 U.S. at 496 ("Given the vital First Amendment interests at stake, it is not enough for Massachusetts simply to say that other approaches have not worked."); Brewer, 18 F.4th at 1254 ("[T]he government's less-restrictive-means analysis must involve at least a serious consideration of less-restrictive means. That is, the government may not simply wave at such an analysis superficially.").

The City candidly acknowledged that it never considered any alternative means of regulation:

> The Jacksonville City Council ***did not consider less restrictive age-based alternatives*** because it was presented with the age of 21 based on Council Member Cumber's research. (emphasis added).

(Doc. 41 at 19).

In fact, the record shows exactly the opposite: the only alternatives the City considered were to make the ordinance even stricter than it was. The sponsor of the legislation, Council Member Cumber suggested that one way to combat the perceived problem was to publicly shame adult businesses and those who patronize them. (Doc. 30-4 [video of workshop] from 0:58:22 through 1:01; 30-4 at 4). Rather

44

than work to soften the blow to speech, officials considered whether they should raise fines from $5,000 to $10,000. (Id. at 1:01 through 1:02).

The Ordinance fails intermediate scrutiny because the City never made the slightest effort to even consider less restrictive means of regulation. *See*, Fane, 945 F.2d 1514, 1519 (11th Cir. 1991), *aff'd*, 507 U.S. 761 (1993) ("The Board has the duty to at least explore less intrusive alternatives than a blanket ban on in-person solicitation imposed on all CPAs.").

### F.    **The Prohibition against Performers under the Age of Twenty-One does not Further the Asserted Government Interest.**

Appellants do not challenge the City's authority to combat human trafficking or its legitimate interest in doing so. However, it is not good enough for the City to simply proclaim an important interest; it must show that "the challenged regulation advances these interests in a direct and material way, and [that]… the restriction on protected speech is in reasonable proportion to the interests served." Edenfield, 507 U.S. at 767; *See, also*, Discovery Network, 507 U.S. at 416 ("It was the city's burden to establish a 'reasonable fit' between its legitimate interests … and its choice of a limited and selective prohibition of newsracks....").

The City cannot show that its law furthers any governmental interest. The record shows that there has never been an arrest for human trafficking at any of the

regulated establishments. Accordingly, the City is proceeding on the basis of theory only: an incident might occur and the complete ban on speech for young adults might be able to prevent one or more crimes. In the absence of actual evidence, that sort of theorizing is not sufficient to support a ban on speech. *See*, Fane v. Edenfield, 945 F.2d 1514, 1518 (11th Cir. 1991), *citing* Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio, 471 U.S. 626, 647-48 (1985) ("Prophylactic restraints on commercial speech based on unsupported assertions or unsubstantiated fears are not acceptable."); Saieg, 641 F.3d at 739 ("'[M]ere speculation about danger' is not an adequate basis on which to justify a restriction of speech." (citation omitted)).

Rather, the government must come forward with actual evidence that its regulation is likely to be effective:

> The State's burden is not slight…. "[M]ere speculation or conjecture" will not suffice; rather the State "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Edenfield, 507 U.S., at 770, 771, 113 S.Ct. 1800; *see also* Zauderer, 471 U.S., at 648–649, 105 S.Ct., at 2280–2281 (State's "unsupported assertions" insufficient to justify prohibition on attorney advertising; "broad prophylactic rules may not be so lightly justified if the protections afforded commercial speech are to retain their force").

Ibanez v. Florida Dept. of Bus. & Prof'l Regulation, Bd. of Accountancy, 512 U.S. 136, 142–43 (1994); *See, also*, Florida Bar v. Went For It, Inc., 515 U.S. 618, 626, 115 S.Ct. 2371, 2377 (1995) ("That burden, we have explained, "'is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a

restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'"); Fort Lauderdale Food Not Bombs, 11 F.4th at 1296, *quoting* McCullen, 573 U.S. at 486 ("The government 'may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'").

Jacksonville's ban on exotic dance performances by persons under the age of twenty-one is only remotely related to the goal of deterring human trafficking. One strong indication that the regulation is not proportional to the problem is to consider who is burdened by the law. Jacksonville's ban does not outlaw human trafficking, it does not enhance penalties for trafficking and it does not constrain the activities of those actually engaged in trafficking in the slightest. Jacksonville Ordinance targets *only* the potential victims of human trafficking by directly censoring their ability to speak. The Ordinance directly bans the speech rights of adult performers who are *not* human traffickers and who have *not* been shown to be especially vulnerable to being victimized.[20]

---

[20]    The fact that there has never been a human trafficking arrest in any of Jacksonville's gentlemen's clubs suggests that adult exotic dance performers are among those persons *least* likely to be the victims of trafficking. That judicially-noticed fact [Doc. 32 at 27-28, n. 11] should be contrasted with record evidence showing that there were approximately 44 ongoing trafficking investigation at the Jacksonville FBI office involving other industries. (Doc. 30-4 at 3). *Compare*, Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 664 (1994) ("[A] 'regulation

## II.    THE BAN AGAINST PERFORMERS UNDER THE AGE OF TWENTY-ONE IS PREEMPTED BY §562.13, FLA.STAT.

STANDARD OF REVIEW:  Preemption presents a question of law which is reviewed *de novo*. *See*, BellSouth Telecommunications, Inc. v. Town of Palm Beach, 252 F.3d 1169 (11th Cir. 2001).

Appellants wish to employ individuals under the age of twenty-one to perform in their alcoholic beverage establishments.[21] The state legislature enacted §562.13, Fla.Stat. which makes this practice entirely lawful. In fact, the statute specifically states that "professional entertainers" as young as seventeen may work in bars so long as they are not in school and there is no nudity.[22] *See*, §562.13(2)(a), Fla.Stat. Sections 150.224(c) and 151.214(c) of the Jacksonville Code obviously conflict with the statute as they prohibit individuals who are under twenty-one from performing in any of Appellants' establishments.

Two forms of preemption apply here: field preemption and conflict preemption:

[T]here are two ways that a county ordinance can be inconsistent with state law and therefore unconstitutional. First, a county cannot legislate

---

perfectly reasonable and appropriate in the face of a given problem may be highly capricious if that problem does not exist'" (citation omitted)).

[21] Appellants' preemption claim does not apply to Sinsations which does not serve alcoholic beverages.

[22] Appellants operate "bikini bars" in which nudity is strictly forbidden.

48

> in a field if the subject area has been preempted to the State.... Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute.

Orange Cnty. v. Singh, 268 So. 3d 668, 673–74 (Fla. 2019).

The legislature has occupied the entire field of regulation when it comes to the age of persons authorized to work in alcoholic beverage establishments; no choices are left to cities. *Compare*, Nat'l Rifle Ass'n of Am., Inc. v. City of S. Miami, 812 So.2d 504, 504 (Fla. 3d DCA 2002) (Local ordinance regulating firearms and ammunition invaded a field preempted by the legislature and was therefore *ultra vires*).

The Jacksonville ordinance is also in direct conflict with the statute as it purports to ban a relationship which the legislature has specifically approved. Having specifically authorized the employment of persons *under* the age of 18 to work in alcoholic beverages, the City cannot avoid the legislature's policy decision by prohibiting individuals who are *older* than 18 from working there.

The trial Court reasoned that there was no preemption because the statute only addressed employment of minors and was silent about adults who were eighteen, nineteen or twenty:

> The statute provides exceptions in which minors may work at establishments that sell alcohol; there is no express provision about how those ages eighteen to twenty-one may or may not be employed.

49

(Doc. 39 at 39).

Having decided that minors as young as seventeen could be employed, no sensible legislature would write such a law to say that nineteen year olds are *also* sufficiently mature to be employed - it is simply assumed that they are by virtue of their age. Once a person has become sufficiently mature to work in a bar, it is unlikely that they will become increasingly *immature* as they age. Sections 150.224(c) and 151.214(c) of the Jacksonville Code are preempted.

## III. JACKSONVILLE'S LICENSING SYSTEM FOR PERFORMERS IMPOSES AN UNCONSTITUTIONAL PRIOR RESTRAINT BECAUSE IT FAILS TO PRESERVE THE STATUS QUO PENDING JUDICIAL REVIEW.

STANDARD OF REVIEW: This Court will review de novo a district court's determination of the facial constitutionality of a statute. *See*, Schultz v. Alabama, 42 F.4th 1298 (11th Cir. 2022).

Jacksonville requires exotic dance performers to obtain a "Work Identification Card" before they are permitted to dance anywhere in the City. *See*, §§150.224(c) and 151.214(c). The permitting scheme is unconstitutional on its face with respect to any current performer or any performer seeking to renew their Identification Card. That is because the Sheriff can deny a license and prohibit speech prior to any judicial review. That system runs contrary to the requirements of the First Amendment which mandates that performers be allowed to dance (i.e. engage in

50

speech) until a court upholds the restraint. In constitutional parlance Jacksonville's Ordinance fails to preserve the status quo pending judicial review.

The Ordinance allows a performer the right to seek judicial review of an adverse license decision. However, the Ordinance makes it quite clear that she cannot perform while the appeal is being pursued:

> (h)    Appeal.  In the event that an applicant for a Work Identification Card is denied, said applicant may request emergency injunctive relief from the Circuit Court of the Fourth Judicial Circuit of the State of Florida. Due to the overriding public interest in not having persons with criminal convictions identified in paragraph (l) perform in adult entertainment establishments, *no provisional Work Identification Cards shall be issued by the Sheriff*. (emphasis added).

§§150.224(h) and 151.214(h).

Whenever one is required to obtain a permit from the government in order to engage in speech, the permitting scheme is a prior restraint on activities protected by the First Amendment. *See*, Shuttlesworth v. City of Birmingham. 394 U.S. 147, 150-51 (1969). When an ordinance acts as a prior restraint on free speech, the ordinance is presumed to be unconstitutional, and in such cases, the government bears a heavy burden to demonstrate that the restriction is valid. *See*, Bantam Books v. Sullivan, 372 U.S. 58 (1963).

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990) is the seminal case on the subject of prior restraints as they relate to the licensing of adult businesses. In

FW/PBS the Supreme Court adopted the earlier holding in Freedman v. Maryland, 380 U.S. 51 (1965) that a restraint on speech was unlawful without judicial approval: "any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained…" FW/PBS. at 227. This requirement is in place because "[o]nly a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression." Freedman, 380 U.S. at 58.

The unlawful restraint in this case occurs in the gap period between the denial of an Identification Card by the Sheriff and the eventual ruling by a judge once the applicant files an appeal. For all current dancers, the status quo at the time of the denial recognizes their right to perform. Under Jacksonville's ordinance the Sheriff's denial would go into effect immediately and the restraint would be in place until a judge determines otherwise.[23] That procedure does not comply with Freedman or FW/PBS.

The trial Court was of the opinion that the status quo requirement was no longer in effect because "courts have instead applied this safeguard as requiring a specific time limit on the initial licensing decision." (Doc. 32 at 66). It is likely that

---

[23] Each day that a performer is restrained from dancing would represent a separate, final and irreversible administrative determination.

the Court misunderstood the import of the Supreme Court's decision in <u>FW/PBS</u> to eliminate the <u>Freedman</u> requirement that government bear the burden of going to court. *See*, <u>FW/PBS</u>, 493 U.S. at 229–30. However, the Court in <u>FW/PBS</u> was absolutely clear that the modification of <u>Freedman</u> was limited and that "the first two safeguards are essential: the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." <u>Id</u>. Jacksonville's ordinance does not maintain the status quo and is therefore unconstitutional.

## IV. THE ORDINANCE DOES NOT GUARANTEE A LICENSING DECISION WITHIN A BRIEF PERIOD OF TIME.

<u>STANDARD OF REVIEW</u>: This Court will review de novo a district court's determination of the facial constitutionality of a statute. *See*, <u>Schultz v. Alabama</u>, 42 F.4th 1298, 1311 (11th Cir. 2022).

A prior restraint is not lawful unless it guarantees a licensing decision within a brief period of time:

> Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible. <u>Freedman</u>, *supra*…

493 U.S. at 225-27; *See, also*, <u>Lady J. Lingerie</u>, 176 F.3d at 1362–63 ("[L]icensing officials must be required to make prompt decisions…").

The Ordinance allows the Sheriff fourteen days to evaluate an application for a Work Identification Card. *See*, §§150.224(f) and 151.214(f) ("The Sheriff shall approve or deny an application within fourteen (14) days of receipt of a completed application…"). Why does the decision take so long?

The Sheriff is required to evaluate an application to make sure it is complete; he must confirm that the applicant took a human trafficking course; and he has to take the applicant's picture. *See*, §§150.224(c), (d), (f) and 151.214(c), (d) (f). All that can be done at the time the application is submitted and would take a matter of minutes. The only inquiry which requires research is the verification that the performer has not committed a disqualifying crime. *See*, §§150.224(l) and 151.214(l). That criminal background search can also be completed almost instantaneously.[24] At least one Court has determined that a dancer license review period as short as five days is an unconstitutional prior restraint. *See*, <u>Kev, Inc. v. Kitsap Cnty.</u>, 793 F.2d 1053, 1060 (9th Cir. 1986).

The trial Court held that the issuance of a temporary work permit cured any

---

[24] According to the FBI, the NCIC database provides law enforcement officers with near-instantaneous access to criminal records on a nationwide basis: "Those records are available to other law enforcement agencies nationwide. For example, an officer can search NCIC during a traffic stop. The *system responds instantly* and tells the officer if the vehicle is stolen or the driver is wanted." (emphasis added). *See*, https://le.fbi.gov/informational-tools/ncic (last accessed 6/26/23).

issue with the lengthy review process. (Doc. 96 at 62). However, that holding is

contrary to precedent in this Circuit that requires a prompt decision regardless of

other concerns:

> Does it matter that an applicant may begin operating while the board is
> still considering its application? We think not... A business can scarcely
> afford to operate in limbo, not knowing whether the City will shut it
> down the next day or not. Further, <u>Freedman</u>'s requirement that the
> status quo be maintained while public officials are deciding does not
> eliminate the requirement that the decision itself must be prompt.

<u>Lady J. Lingerie</u>, 176 F.3d at 1363. Conditional approval does not excuse the

unreasonably long review period.

## **CONCLUSION**

Jacksonville has imposed a ban on speech by certain young adults based on its perception that exotic dancers are susceptible to human trafficking. There is no basis for that conclusion on this record which shows that there has never been an arrest for trafficking in an adult club. The City acknowledges that it did not even consider less restrictive means of regulation despite a wide variety of alternatives, some of which have proven effective in other communities. Neither can the City show that its infringement on speech actually deters trafficking – especially since the prohibition targets only the potential victims and poses no burden whatsoever on the criminals. The ban turns on the content of speech, it is not narrowly tailored and there is no showing that any governmental interest is advanced by the censorship. The City failed its burden of proof at every level under either strict or intermediate scrutiny.

The age-based restriction is also preempted by §562.13, Fla.Stat.

The City's licensing scheme for exotic dancers imposes an unconstitutional prior restraint on its face in two respects. It does not preserve the status quo pending judicial review and the licensing process itself takes an unreasonably long period of time.

The Final Judgment should be reversed outright as to each of these points.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

|  |  |
|---|---|
| JAMES S. BENJAMIN, Esquire |   /s/  Gary S. Edinger |
| Florida Bar No.: 293245 | GARY S. EDINGER, Esquire |
| DANIEL R. AARONSON, Esquire | Florida Bar No. 0606812 |
| Florida Bar No.: 314579 | 305 N.E. 1st Street |
| 1700 East Las Olas Blvd., Suite 202 | Gainesville, Florida 32601 |
| Ft. Lauderdale, Florida 33301 | (352) 338-4440  (Fax) (352) 337-0696 |
| (954) 779-1700 (Fax) (954) 779-1771 | GSEdinger12@gmail.com |
| sexlaw@bellsouth.net | |
| danaaron@bellsouth.net | |

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Fed.R.App.P. 28.1(e)(2) or 32(a)(7)(B) because this Brief contains 12,992 words, excluding the parts of the Brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii)

This Brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using MS Word 2013 in Times New Roman 14 point font.

  /s/  Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No.: 0606812

57

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that pursuant to Rule 31(b), Fed.R.App.P., an electronic copy of this Initial Brief has been uploaded to the Eleventh Circuit Internet site on this 28th day of June, 2023 and that a copy of same has been forwarded to JASON R. TEAL, Esquire [jteal@coj.net], CRAIG D. FEISER, Esquire [cfeiser@coj.net]; MARY MARGARET GIANNINI, Esquire [MGiannini@coj.net]; and to GABRIELLA YOUNG, Esquire [GCYoung@ coj.net], 117 West Duval Street, Suite 480, Jacksonville, Florida 32202, via the ECF System this 28th day of June, 2023.

/s/ Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No.: 0606812